### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| MATT GREEN, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 08-2585 (AET) |
| | : | |
| v. | : | |
| | : | **M E M O R A N D U M** |
| JON CORZINE, et al., | : | **O R D E R** |
| | : | |
| Defendants. | : | |
| | : | |

This matter has come before the Court on submission of a civil complaint ("Complaint") signed, on May 15, 2008, by pro se Plaintiffs Matt Green ("Green"), Jose Ramos ("Ramos"), Sean Washington ("Washington"), and Maurice Taylor ("Taylor"), who are confined at New Jersey State Prison, Trenton, New Jersey; Plaintiffs' Complaint came accompanied by an application to proceed in forma pauperis, which: (a) clarified Plaintiffs' position that the filing fee should be assessed against Ramos; and (b) included only Ramos' affidavit of indigence and six-month prison account statement. See Docket Entries Nos. 1 and 1-2.

It appearing that:

1.  Plaintiffs, being inmates suffering from various orthopedic and prosthetic conditions, filed the aforesaid complaint as self-designated representatives of a putative class consisting of themselves and others whom Plaintiffs defined as "all those similarly situated." See Docket Entry No. 1, at 1-2, 16 (clarifying that "[h]undreds if not thousands of

prisoners with orthopedic and prosthetic conditions are committed to the custody of [New Jersey Department of Corrections] every year").

2.    Plaintiffs' Complaint alleges that their putative class should be certified because "[t]he claims raised by [P]laintiffs . . . are similar to and typical of the substandard and inadequate level of care provided to prisoners with orthopedic needs." Id. at 37.  "They request that [the] class be certified . . . consist[ing] of 'all men and women with orthopedic, prosthetic, and podiatric conditions who are now or will in the future be committed to the custody and care of the New Jersey Department of Corrections." Id.  "Plaintiffs further maintain that this case is appropriate for class certification because of" certain reasons, see id.; Plaintiff describe these reasons by reciting, verbatim, the requirements for a class certification, without making any factual contentions.  See id. at 37-38.  Plaintiffs conclude their statement as to why the class should be certified by noting that "a class action is appropriate because (a) prosecution of separate actions by . . . individual members of the class would risk inconsistent and varying adjudications and incompatible standards of conduct for [Defendants], (b) other class members who are not parties to the adjudication would be

unable to adequately protect their interests or would be
substantially impaired or impeded from protecting their
interests, and (c) [Defendants] have acted or have refused
to act on the grounds generally applicable to the [putative]
class, thereby making appropriate final injunctive relief or
corresponding declaratory relief with respect to the class
as a whole." Id. at 38.

3.  Plaintiffs state the following causes of action: (a) denial
of medical care; (b) violation of the Americans with
Disabilities Act ("ADA"); (c) violation of the
Rehabilitation Act ("RHA"); (d) violation of the New Jersey
Constitution; (e) violation of public policy reflected in
New Jersey legal provisions; (f) breach of contract "for
third-party beneficiaries" (effectively seeking to enforce
the rights of the State of New Jersey against the State's
Department of Corrections, deeming themselves third-party
beneficiaries of the contract between the State and the
Department); (g) medical malpractice; (h) negligence; and
(i) infliction of emotional distress.  See id. at 38-46.
For each of these causes of action, Plaintiffs seek
"compensatory and consequential damages . . . in excess of
$100,000."  See id.  In addition, Plaintiffs seek
declaratory judgment, injunctive relief, costs and attorney
fees.  See id. at 46-47.

4.   The Complaint also details the facts underlying the claims of each Plaintiff.

    a.   The Complaint asserts that Green, having extra-wide feet, is comfortable only when he wears footwear size 10EEE.  See id. at 21.  Following his incarceration in the state of New Jersey, Green was originally issued footwear size 10 rather than 10EEE, which complicated his daily activities and resulted in ulcers on Green's feet.  See id. at 22.  In 1999, Green had a medical prescription issued and filled, providing him with 10EEE boots and 10EEE sneakers.  See id.  However, during a search of New Jersey State Prison in 2006, the prescription footwear was stolen, and Green was again supplied with footwear size 10 rather than 10EEE, which caused reappearance of ulcers.  See id. at 23-24. Following a number of doctor visits for treatment of the ulcers, Green was eventually issued boots size 11, which have "accommodate[d] the width of his feet [but have been too big in length and] produced a new set of bleeding ulcers."  Id. at 24-26.  The Complaint states that lack of 10EEE footwear and the need to wear footwear size 11 causes Green "pain, physical injury, and emotional suffering."  Id. at 27.

b.   With respect to Ramos, the Complaint asserts that
     Ramos, having severe pre-incarceration injuries to his
     feet and legs, had been trying to rehabilitate his
     lower limbs through a daily regimen of exercises and
     therapy since the time of the accident that caused the
     injuries.  See id. at 27-28.  The Complaint states
     that, following his incarceration, Ramos experienced
     "repeated delays in obtaining orthopedic braces, shoes,
     lifts and insoles" and was denied therapy.  See id. at
     28.  The Complaint details events related to Ramos'
     medical conditions from 1999 to August 2006.  See id.
     at 27-32. It specifies that Ramos' August 1, 2006,
     request for orthopedic sneakers was denied, and Ramos,
     being unable to keep his exercise regimen in orthopedic
     boots issued to him, experienced "muscle weakness,
     stiffness, swelling, and constant pain" in his foot and
     ankle.  See id. at 32.  Experiencing a surge of pain on
     September 1, 2006, Ramos sought medical help.  See id.
     Eventually, Ramos was examined by medical doctors who,
     allegedly denied him any treatment and refused issuance
     of orthopedic sneakers citing budget cuts.  See id. at
     33.

c.   With respect to Washington, the Complaint alleges that,
     suffering from a pre-incarceration injury to his leg

and, also, from Multiple Sclerosis, Washington has been in need of an orthopedic mattress, orthopedic chair and shower chair. See id. at 34. In addition, while being in custody, Washington underwent a surgery and was informed of the need for further surgeries. See id. However, the Complaint asserts that the following surgeries have been denied to Washington, no prescribed physical therapy has been provided, and no orthopedic mattress, orthopedic chair, or shower chair was supplied. See id. at 34-35. In addition, the Complaint asserts that Washington was experiencing delays in getting prescription for orthopedic boots and sneakers during the period from 1999 to 2001, and the prescription finally obtained in 2001 has not been filled. See id.

d.    Finally, with respect to Taylor, the Complaint asserts that Taylor, having his leg amputated prior to his incarceration, "wears a prosthetic leg [and] enjoys most of life's daily activities," but--as many amputees--favors his remaining leg and, consequently, has that leg "overdeveloped." See id. at 36. The Complaint alleges that Taylor needs corrective therapy and exercise; the latter could be easily performed if Taylor wore prescription sneakers. Such sneakers,

although with delays, were prescribed and provided to him until 2007.  See id.  However, according to the Complaint, in 2007, "Taylor began to experience difficulty [in] obtaining necessary orthopedic care."  See id.  The Complaint does not detail which of Taylor's medical needs were eventually fulfilled, but it clarifies that Taylor is currently deprived of therapy and was told that, unlike with respect to orthopedic boots, new (and, presumably, substituting for the current ones) orthopedic sneakers would not be prescribed and provided to him due to the budget cuts affecting the State of New Jersey and, inter alia, its Department of Corrections.  See id. at 37.

5.   A party seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23.  See Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001).  To meet this burden, Plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the subsections of Rule 23(b). See id.; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).  The Court of Appeals for the Third Circuit has recognized the utility, and often the necessity, of looking beyond the pleadings at

the class certification state of litigation.  See Newton v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154,
168-69 (2001) ("In reviewing a motion for class
certification, a preliminary inquiry into the merits is
sometimes necessary to determine whether the alleged claims
can be properly resolved as a class action").  Despite that
review, "it is not necessary for the plaintiffs to establish
the merits of their case at the class certification stage"
and "the substantive allegations of the complaint must be
taken as true."  Chiang v. Veneman, 385 F.3d 256, 262 (3d
Cir. 2004).

6.   Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative
> parties will fairly and adequately protect the
> interests of the class.

7.   "Numerosity requires a finding that the putative class is so
numerous that joinder of all members is impracticable."
Newton, 259 F.3d at 182; Fed. R. Civ. P. 23(a)(1).  "No
single magic number exists satisfying the numerosity
requirement." Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D.
Pa. 1989). The Court of Appeals, however, generally has
approved classes of forty or more.  See Stewart v. Abraham,

275 F.3d 220, 226-27 (3d Cir. 2001).  In the case at bar, Plaintiff has alleged a putative class of 650. Consequently, the Court concludes that the numerosity requirement is satisfied as to the putative class proposed by Plaintiffs.

8.  To satisfy the commonality requirement, Plaintiffs must show the existence of at least one question of law or fact common to the class.  See  Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001). It is not necessary that all putative class members share identical claims.  See Hassine v. Jeffes, 846 F.2d 169, 176-177 (3d Cir. 1988).  "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded."  Baby Neal, 43 F.3d at 57.  Therefore, the Court finds that this prerequisite is also met by Plaintiffs' application with respect to both the putative class.

9.  Rule 23(a)(3) provides that the typicality requirement is satisfied if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement is designed to align the interests of the class and its representatives so that the latter will work for the benefit of the entire class through the pursuit of their own goals.  See In re Prudential Ins. Company of America, 148 F.3d 283, 311 (3d Cir. 1998).

"Factual differences will not render a claim atypical if the claim arises from the same event . . . and if it is based upon the same legal theory." <u>Hoxworth v. Blinder, Robinson & Co., Inc.</u> 980 F.2d 912, 923 (3d Cir. 1992).  However, in the case at bar, the typicality of claims and defenses does not appear to be present with respect to the putative class in view of differences of facts and ensuing legal theories (and corresponding defenses) fostered by Plaintiffs.  For instance, while the allegations related to Green unequivocally allege intentional actions, allegations related to Taylor appear to assert reckless or negligent actions.  To give another example, the alleged denial of surgeries to Ramos, a definite "denial of medical care" claim, differs from the alleged denial of an orthopedic mattress and chair to Washington, which might be a "conditions of confinement" claim, hence, calling for different legal tests and related defenses.  Therefore, the Court finds that the requirement of typicality is not met.

10. Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In this case, the representative parties and the absentee members of the putative class include those soon to be released from the facility, as well as those facing very extensive and lengthy confinement, and

the interests of the former may substantially diverge from those of the latter.  Moreover, some of the members, e.g., Green, are in custody of New Jersey Department of Corrections pursuant to the Interstate Corrections Compact, (see Docket Entry No. 1, at 21), and might be moved out of the State, hence losing their interest in this litigation once their conditions of confinement change.  Therefore, this Court finds that this prerequisite is not met.

11. In addition to satisfying Rule 23(a), Plaintiffs must also show that the putative class falls under at least one of the three subsections of Rule 23(b).  Moreover, since Plaintiffs' putative class seeks money damages, the class must satisfy Rule 23(b)(3), which requires questions of law or fact common to the class to predominate those affecting individual members, and that a class action be the superior method for adjudicating their claims.  See Grider v. Keystone Health Plan Cent., Inc., 2006 U.S. Dist. LEXIS 93085, at *36 (E.D. Pa. Dec. 21, 2006).  Here, the Court finds that neither the requirement of predominance nor that of superiority are met with respect to the putative class. The claims raised by Plaintiffs are factually disparate, and resolution of many of the matters raised by each Plaintiff of the putative class would require minitrials at both the liability and damages stages.

12.  Therefore, because Plaintiffs fail to meet the typicality, adequacy, predominance and superiority requirements of Rule 23, the Court denies class certification.

13.  The Court now turns to Plaintiffs' application to proceed in this matter in forma pauperis.  The Prison Litigation Reform Act ("PLRA") requires a prisoner seeking permission to file a civil rights complaint in forma pauperis to file an affidavit of poverty and a prison account statement for the six-month period immediately preceding the filing of the complaint.  28 U.S.C. § 1915(a)(2).  If the prisoner is granted permission to file the complaint in forma pauperis, then the Court is required to assess the $350.00 filing fee against the prisoner, which is collected in installments from the plaintiff's prison account in accordance with the schedule set forth by 28 U.S.C. § 1915(b).  The Court also screens the complaint for dismissal and to dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief.

14.  Here, all Plaintiffs are prisoners.  While none of Plaintiffs prepaid his filing fee, only Ramos submitted his affidavit of poverty and six-month prison account statement required by 28 U.S.C. § 1915(a)(2).  Therefore, the Court will grant Ramos's application to proceed in forma pauperis

for the purposes of Ramos' claims stated in the Complaint, and screen the complaint accordingly.  The Court denies Green, Washington, and Taylor's applications to proceed <u>in forma pauperis</u> for the purposes of their individual claims stated in the Complaint.  Thus, the Court terminates Green, Washington, and Taylor as Plaintiffs in this action.

15. The Court now reviews Ramos's Complaint to determine whether it should be dismissed, either in part or in its entirety.

16. In determining the sufficiency of a *pro se* complaint, the Court construes the facts stated in the complaint liberally in favor of the plaintiff.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  The Court "accept[s] as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view[s] them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>Id.</u>  A court may dismiss a complaint if it appears that a plaintiff has not pled "enough facts to state a claim for relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).

17. Here, Ramos raises federal claims, i.e., alleging violations of the Eighth Amendment and federal statutes, state statutory and common law claims, and a claim for breach of a contract between the State of New Jersey and the Department of Corrections. As to the breach of contract claim, because the State of New Jersey, the party injured by the Department of Corrections' alleged breach of contract has not designated either Ramos to litigate the alleged breach of contract claim on behalf of the State, Ramos has no standing to raise the claim. Therefore, Ramos's breach of contract claim is dismissed with prejudice. Moreover, the Court finds it premature to address Ramos' state law claims.

18. Ramos raises three claims asserting federal jurisdictional basis: (a) violations of the ADA; (b) violations of the RHA; and (c) "denial of medical care," which the Court construes as a statement alleging violations of Ramos' Eighth Amendment rights. However, the statute of limitations in a § 1983 action is determined by state law. See Wilson v. Garcia, 471 U.S. 261, 276 (1985). Here, the applicable statute of limitations is two years. See Bougher v. University of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989). A Section 1983 cause of action accrues when the Plaintiff knew or should have known of the injury on which his claim is predicated. See Sameric Corp. of Delaware v. City of

Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).  Here,
Ramos's allegations detailing occurrences that took place
after May 16, 2006,[1]  are limited to three events: (1) the
Department of Correction's denial of orthopedic sneakers on
June 5, 2006, in response to Ramos' March 13, 2006, request;
(2) submission of another request for orthopedic sneakers by
Ramos on August 1, 2006, citing his deteriorating health
condition; (3) lack of medical treatment of Ramos's severe
back pain on September 1, 2006, and at all times thereafter,
up to the date of the execution of the Complaint.  This
Court, therefore, limits its analysis to Ramos's claims that
are based on these three events.  All allegations asserting
violations of Ramos' federal rights prior to May 16, 2006,
are dismissed as time barred.

19. Ramos's Complaint does not state a claim under either ADA or
RHA.  The ADA provides, in relevant part, that "no qualified
individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied
the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any such

---

[1]  An inmate's pleading is deemed submitted for filing at
the time when the inmate passes it to prison officials for
mailing.  The Court presumes, for the purposes of this
preliminary review only, that the Complaint was submitted to
Ramos' prison officials on May 15, 2008.

entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the

Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a
> disability in the United States . . . shall,
> solely by reason of her or his disability, be
> excluded from the participation in, be denied the
> benefits of, or be subjected to discrimination
> under any program or activity receiving Federal
> financial assistance or under any program or
> activity conducted by any Executive agency . . . .

29 U.S.C. § 794.  Cases interpreting the language of the ADA

and that of the Rehabilitation Act concluded that the

applicable legal tests created by these statutes are

interchangeable.  Calloway v. Boro of Glassboro Dep't of

Pol., 89 F. Supp. 2d 543, 551 (D.N.J. 2000).  To state a

claim for violation of either the Rehabilitation Act or the

ADA, the plaintiff must show that (s)he: (a) has a

disability, (b) is otherwise qualified to participate in a

program, and (3) was denied the benefits of the program or

discriminated against because of the disability.[2]  See

Millington v. Temple Univ. Sch. of Dentistry, 261 Fed. App.

363, 365 (3d Cir. 2008).  Here, Ramos alleges that he is

unable to walk sufficiently, a physical condition that may

qualify as a "disability" within the meaning of the ADA and

RHA, because it "substantially limits one or more . . .

---

[2] Both the ADA and RHA apply in the prison context.  See,
e.g., Bartolomeo v. Plymouth County House of Corr., 2000 U.S.
App. Lexis 20915, at *5 (1st Cir. Aug. 16, 2000).

major life activities."  42 U.S.C. § 12102; 29 U.S.C. §
705(20)(B).  However, he does not assert that he otherwise
qualified for, but was excluded from, any specific program
or service provided by the prison he is confined at or
otherwise discriminated as a result of any such disability.[3]
See Iseley v. Beard, 200 Fed. App. 137, 142 (3d Cir. 2006).
Thus, Ramos has not asserted a viable claim under either the
ADA or the RHA, and these claims are dismissed without
prejudice.[4]

IT IS, THEREFORE, on this 23rd day of June, 2008,

ORDERED that Plaintiffs' application for certification of a
putative class is DENIED WITHOUT PREJUDICE; and it is further

ORDERED that Plaintiff Ramos' application to proceed in
forma pauperis is granted; and it is further

---

[3]  Even if the Court is to construe Ramos' allegations (that
he was denied prescription footwear, etc.) extra-broadly, no
statement made in the Complaint suggests that inmates with other
disabilities (or those without any disabilities) did not suffer
identical or comparable denials as a result of the State's
budget-cutting measures.

[4]  While the Court has no basis for granting conditional in
forma pauperis status to other Plaintiffs, the Court notes that
the statements made in the Complaint suggest that certain claims
brought by Washington and Taylor (and, to a lesser extent, Green)
might be barred by the applicable statute of limitations if
further time lapses.  Consequently, the Court: (a) processed the
instant matter on the expedited basis; and (b) urges Washington,
Taylor and Green to submit their individual complaints promptly,
that is, if they intend to make such submissions.

ORDERED that the applications to proceed <u>in</u> <u>forma</u> <u>pauperis</u> by Plaintiffs Green, Washington and Taylor are DENIED WITHOUT PREJUDICE; and it is further

ORDERED that the Clerk shall terminate Plaintiffs Green, Washington and Taylor as Plaintiffs in this action, and retain this matter as an action of Plaintiff Ramos; and it is further

ORDERED that the Clerk of the Court shall file the Complaint without prepayment of the filing fee; and it is further

ORDERED that the Complaint may proceed past the <u>sua</u> <u>sponte</u> dismissal stage; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(d), the Clerk of the Court shall issue summons, and a United States marshal shall serve summons, together with copies of the Complaint and this Order, upon Defendants, with all costs of service advanced by the United States; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants shall file and serve a responsive pleading within the time specified by Fed. R. Civ. P. 12 and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff Ramos of the opportunity to apply in writing to the Court for the appointment of pro bono counsel in accordance with the factors set forth in <u>Tabron v. Grace</u>, 6 F.3d 454 (3d Cir. 1997), which sets forth the requirements for eligibility for

appointment of pro bono counsel (in this regard, Plaintiff is advised that such appointment is neither guaranteed nor automatic); and it is further

ORDERED that the Clerk shall enclose with such notice a copy of Appendix H and a form Application for Appointment of Pro Bono Counsel; and it is further

ORDERED that, if at any time Plaintiff Ramos seeks the appointment of pro bono counsel, pursuant to Fed. R. Civ. P. 5(a) and (d), Plaintiff shall: (a) serve a copy of the Application for Appointment of Pro Bono Counsel by regular mail upon each party at his last known address or, if the party is represented in this action by an attorney, upon the party's attorney at the attorney's address, and (b) file a Certificate of Service with the Application for Pro Bono Counsel; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk of the Court shall forward a copy of this Order by regular mail to the Attorney General of the State of New Jersey as well as to the warden of the place of Plaintiff Ramos's current confinement; and it is further

ORDERED that Plaintiff Ramos is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff Ramos is assessed an initial partial filing fee and, when funds exist, the agency having custody of Plaintiff shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk of the Court; and it is finally

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the agency having custody of the plaintiff shall assess, deduct from Plaintiff Ramos' account, and forward to the Clerk of the Court payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that the Clerk shall serve, by regular U.S. mail, a copy of this Order upon Plaintiff Ramos, together with a blank civil rights complaint form; and it is finally

ORDERED that the Clerk shall serve, by regular U.S. mail, copies of this Order upon Plaintiffs Green, Washington and Taylor; such service should be executed by *individualized mailings* addressed separately to Plaintiffs Green, Washington and Taylor, and each such mailing shall include, in addition to a copy of this Order, a blank form to proceed in forma pauperis and a blank civil rights complaint form.

s/ Anne E. Thompson
**ANNE E. THOMPSON**
**United States District Judge**