NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Jose RAMOS | : | |
| Plaintiff, | : | Civil No. 08-2585 (AET) |
| v. | : | **OPINION & ORDER** |
| Jon CORZINE, et al., | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

This matter has come before the Court upon Defendants Jeffrey Bell, Jon Corzine, Thomas Farrell, George Hayman, Vaughn Hinman, Robert Paterson, Michelle Ricci, Peter Ronoghan, Lydell Sherrer, Dr. Ralph Woodward and the University of Medicine and Dentistry of New Jersey's ("UMDNJ") Motion to Dismiss or for Summary Judgment [docket # 70]. The Court has decided this motion after taking into consideration the submissions of both parties, without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.  Background**

On May 27, 2008, Plaintiff Jose Ramos, proceeding *pro se* along with three other inmates, submitted a section 1983 class action Complaint [docket # 1] on behalf of a putative class of state prisoners "with serious, debilitating orthopedic and prosthetic conditions" alleging that they had been deprived of their right to adequate medical care in violation of the Eighth Amendment and the New Jersey Constitution, that Defendants' actions violated New Jersey public policy, and alleging state common law claims of medical malpractice, negligence, and

infliction of emotional distress.[1]  The Court denied class certification because Plaintiffs failed to meet the typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23. (6/24/08 Order 12.)  However, Jose Ramos's application to proceed *in forma pauperis* was granted and his claims proceeded on an individual basis.  (*Id.* at 13.)

Ramos alleged that he had severe pre-incarceration injuries to his feet and legs which left him with a condition called "drop foot" and which required rehabilitation through a regimen of exercises and physical therapy.  (Compl. 27-28.)  Ramos claims that post-incarceration he experienced "repeated delays" obtaining needed "orthopedic braces, shoes, lifts and insoles." (*Id.* at 28.)  Ramos alleges that a variety of Defendants' policies and practices contributed to his injuries.  The Complaint details events beginning in 1999, however, in accordance with the June 24, 2008 Order, the Court will only address claims related to three events: (1) the New Jersey Department of Correction's ("DOC") alleged denial of orthopedic sneakers on June 5, 2006; (2) Ramos' submission of another request for orthopedic sneakers on August 1, 2006, and (3) alleged lack of medical treatment for Ramos' severe back pain on September 1, 2006.  (6/24/08 Order 15.)

Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the UMDNJ ("Defendants") have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted or for summary judgment pursuant to Fed. R. Civ. P. 56.  Defendants assert that their motion should be

---

[1] Ramos and the other inmates also alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act of 1973 ("RHA", 29 U.S.C. § 794(a), and breach of contract.  The ADA and RHA claims were dismissed without prejudice and the breach of contract claims was dismissed with prejudice upon the Court's initial screening of the Complaint.  (6/24/08 Order 14, 17 [docket # 2].)

granted because they were not deliberately indifferent to Ramos's medical needs. They further assert that Ramos's claims should fail because they are improperly based upon a theory of respondeat superior and because Defendants are not "persons" amenable to suit under Section 1983.[2]

Defendant Corzine is the Governor of the State of New Jersey. Defendant Hayman is the Commissioner of the DOC. Defendant Sherrer was the Acting Assistant Commissioner of the DOC. Defendant Paterson is the Director of the Division of Operations at the DOC. Defendant Farrell is the Assistant Director of the Division of Operations at the DOC. Defendant Woodward is the Director of Medical Services at the DOC. Defendant Ricci is the Administrator of New Jersey State Prison ("NJSP"). Defendant Bell was an Assistant Superintendent at NJSP. Defendant Ronoghan is the Business Manager at NJSP. Defendant Hinman is the Storekeeper at NJSP.

The UMDNJ allegedly entered into an interagency agreement with the DOC to provide medical care to inmates beginning in June 2008. (Compl. 34.) Prior to that, medical care was contractually provided to inmates by Correctional Medical Services, Inc. ("CMS").[3] (*Id.*)

## II. Legal Standard

### 1. Rule 12(b)(6) Standard

Under Fed. R. Civ. P. 12(b)(6), the defendant bears the burden of showing that no claim

---

[2] Defendants have also argued that punitive damages are inappropriate as there is no evidence of evil motive or callous indifference to a federally protected right. This issue is moot, as all claims against Defendants for which Ramos requests punitive damages are dismissed in this Opinion and Order on other grounds.

[3] Ramos has also filed claims against CMS, several CMS employees, and the clinic that provided the prosthetics consults. However, those defendants have not joined in this motion.

has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court must accept as true all of a plaintiff's factual allegations, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must contain sufficient factual matter to state a claim that is facially plausible. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

        2.      Summary Judgment Standard

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

To survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. This requires more than the "mere existence of a scintilla of evidence"

supporting the non-moving party. *Anderson*, 477 U.S. at 252.

**III.　Analysis**

In order to succeed in a Section 1983 action claiming inadequate medical treatment, a prisoner must show that a defendant exhibited "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). "Deliberate indifference," is a subjective standard of liability consistent with recklessness as that term is defined in criminal law. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Thus, allegations of simple medical malpractice based on negligence do not rise to the level of a violation of the Eighth Amendment. *Id.*

　　　　1.　　Liability of Non-Medical Prison Officials

Defendants assert that they did not exhibit deliberate indifference towards Ramos's medical needs as Ramos was actively being treated by medical personnel. The Third Circuit has held that absent actual knowledge or reason to believe that medical personnel are mistreating or failing to treat a prisoner, non-medical prison officials cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Durmer*, 991 F.2d at 69. At all points relevant to this litigation, Ramos was under the care of medical personnel.[4] Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, and Sherrer are not physicians or medical personnel and therefore cannot be considered deliberately indifferent to Ramos's medical needs unless they were personally aware of Ramos's injuries and subsequently acted with deliberate indifference or

---

[4] Ramos questions the adequacy of the medical care that he was provided, but it is undisputed that he was repeatedly seen by registered nurses and physicians as well as being repeatedly referred to outside specialists for consults.

there is some other basis for liability.  There is no evidence that Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, or Sherrer knew or had any reason to believe that prison medical staff were mistreating or not treating Ramos.

While Dr. Woodward and the UMDNJ did not directly treat or diagnosis Ramos, neither is a "non-medical" prison official.  *See Afdahl v. Cancellieri*, 2009 WL 5213992, at * 6 (D.N.J. Dec. 21, 2009) (physician who was chief of dental services was not a "non-medical" prison official).  Woodward is a physician and is the Director of Medical Services at the DOC.  The UMDNJ has contracted to provide healthcare services for the DOC.  Both are clearly involved in the provision of medical care.  Thus, the claims against Woodward and the UMDNJ cannot be dismissed solely based on *Spruill* and *Drumer*.

The claims against the UMDNJ must fail, however, as the Complaint contains no specific allegations of deliberate indifference on the part of the UMDNJ.  Neither UMDNJ nor any of its employees are alleged to have known about Ramos's mistreatment or failure to be treated, nor does Ramos allege that any of the UMDNJ's policies or practices caused him any injury.  Thus, Ramos has failed to state a claim against the UMDNJ upon which relief has been granted. Ramos does include specific allegations regarding actions taken by Dr. Woodward, as discussed below.

    2.    <u>Supervisory Liability</u>

Defendants also assert that Ramos's claims against them fail as a matter of law because they are improperly premised on a theory of respondeat superior.[5]  Liability under Section 1983

---

[5]This argument is asserted by all Defendants who have joined in the motion except the UMDNJ.

cannot be premised solely upon a theory of respondeat superior.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).  A defendant's personal involvement in the alleged wrongs must be shown.  *Id.* at 1208.

There are two theories of liability under which a supervisor may be personally liable.  The first theory of liability "provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004).  Ramos has not alleged facts which support a claim under this theory of supervisory liability.[6]

The second theory of liability provides that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* at 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)).

The Complaint asserts that Defendant Corzine issued directives ordering the DOC to freeze hiring and reduce operating costs in all departments, and that the result of these directives was the reduction of medical services and more stringent guidelines to obtain approvals for

---

[6]Ramos's Complaint alleges that Defendants Ricci, Bell, Ronoghan and Hinman have refused to fill prescriptions or refused to authorize funds to fill prescriptions for orthopedic items.  In addition, the Complaint alleges that Defendants Hayman, Sherrer, Paterson, and Ricci knew that prescribed orthopedic items were being confiscated during routine cell searches, and that they failed in their supervisory capacity to properly train custody staff or to otherwise prevent staff from improperly confiscated these items.  However, Ramos's allegations do not include any instances of his orthopedic shoes or boots being confiscated or of a refusal to fill a prescription for orthopedic shoes or boots that fall within the statute of limitations.

consultations or treatment referrals. (Comp. 37.) The Court finds that the allegations regarding Defendant Corzine's directives fail to state a claim upon which relief can be based as a matter of law. Corzine's decision to issue a broad, DOC-wide directive of this type does not plausibly lead to the inference that he was aware of or deliberately indifferent to the risk of the specific type of inadequate medical care of which Ramos complains. There is no allegation or evidence that Corzine was made aware of the risks associated with reducing consultations or treatment referrals or that he had this in mind when he issued the alleged directives.

Ramos also contends that Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward implemented a fiscal austerity plan wherein speciality referrals made by CMS doctors are screened and disapproved for non-medical reasons related to cost. (Compl. 37.) In addition, Ramos alleges that these Defendants negotiated a contract with CMS which improperly extended the delivery date for specialty care referrals and required a minimum number of prisoners to accumulate on the roster for a specialty care clinic before a clinic or consultation would be scheduled. (*Id.* at 36.)

Although a prosthetics consult was ordered for Ramos on May 1, 2006, one had not yet been conducted by August 1, 2006, at which time Ramos renewed his request for orthopedic sneakers. (Hutton Decl., Ex. B at RAMOS 009 [docket # 70].) Ramos was seen on September 5, 2006 for a prosthetics consult and received orthopedic boots on November 14, 2006, more than six months after the original consult was ordered. (*Id.*, Ex. D at RAMOS 034; *Id.*, Ex. E at RAMOS 060.)

Defendants' brief does not discuss the existence or absence of a fiscal austerity plan, the terms of the contract with CMS, Defendants' role in the creation or administration of such

policies, or the implications of such policies for Ramos's medical care. Thus, at this point, taking all inferences in favor of the non-moving party, the Court finds that there is a material question of fact as to the existence of a screening policy or contract which defers or disapproves speciality referrals, these defendants' awareness of potential medical risks when they decided to implement the alleged policies, and the effect of these alleged policies in delaying Ramos's medical treatment for non-medical reasons. Deliberate indifference can be found where "necessary medical treatment [i]s ... delayed for non-medical reasons." *Durmer*, 991 F.2d at 69 (quoting *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

Although Plaintiff has provided no specific evidence indicating that Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward were directly involved in the creation of a fiscal austerity plan or formation of the contract with CMS, given the roles these defendants held at the DOC the Court cannot, as a matter of law, determine that these individuals played no part in the creation or administration of a policy under which unconstitutional practices may have occurred. *See Houston v. Trella*, 2006 WL 2772748, at *10 (D.N.J. Sept. 25, 2006).

In addition, Ramos asserts that Defendants Hayman, Sherrer, Paterson, Farrell, and Woodward directed medical care providers "not to prescribe or furnish orthopedic footwear needed for physical exercise and rehabilitation programs." (Compl. 38.) It could reasonably be inferred the alleged denial of orthopedic sneakers on June 5, 2006 was the direct result of such a policy. However, it is not true that Ramos was not provided with any orthopedic footwear. After Ramos's August 1, 2006 request for orthopedic sneakers he was fitted for and provided with orthopedic boots. (Hutton Dec., Ex. E at RAMOS 060.) In addition, he was prescribed an

ankle brace that could be used with athletic shoes.  (Hutton Decl., Ex. D at RAMOS 42, 44, 48.)

Ramos's Complaint and Opposition [docket # 72] suggest that these orthopedic boots were inadequate because inmates were not allowed to wear boots in the gym facilities and he needed to exercise his leg and ankle in order to avoid "atrophy and loss of function.  (Compl. 50; Opp. 5.)  However, the need for orthopedic sneakers versus orthopedic boots and/or an ankle brace appears to be a "mere disagreement over acceptable treatment"—which does not amount to a constitutional violation.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).[7]

In conclusion, there is no evidence that any of the Defendants who joined in this motion were personally aware of Ramos's injuries and subsequently acted with deliberate indifference.  However, Defendants did not brief the adequacy of Ramos's claims against Hayman, Sherrer, Paterson, Farrell, and Woodward based upon supervisory liability for the impact of the alleged fiscal austerity plan and contract with CMS on Ramos's medical treatment.  The Court finds that Ramos's allegations as to those policies are sufficient to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The matter has been insufficiently briefed for the Court to address those claims under Fed. R. Civ. P. 56(b)'s summary judgment standard.

### 3.    Sovereign Immunity

The Eleventh Amendment prohibits lawsuits for damages in federal court against state officials being sued in their official capacity.  *Lakaris v. Thornburg*, 661 F.2d 23, 25-26 (3d Cir.

---

[7]Ramos also argues that Defendants Woodward and Farrell authorized a policy which allowed "sick call screening staff to defer referring a physician to a prisoner until the prisoner had complained about his or her condition at least 3-times." (Compl. 39.)  Although Ramos alleges that this "3-strike" policy existed, it does not appear that the sick call screening staff ever deferred his treatment in this manner.

1981).[8]  However, to the extent that Defendants are being sued in their official capacities for prospective relief, Ramos's claims were properly brought under Section 1983 and are not barred by the Eleventh Amendment.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 79 n.10 (1989).  Ramos's claim for denial of adequate medical care against Hayman, Sherrer, Paterson, Farrell, and Woodward in their official capacities seeks only prospective declaratory and injunctive relief.  To the extent that this claim survives, the Court sees no reason to dismiss Ramos's state law claims at this time.

### IV. Conclusion

For the foregoing reasons, it is on this 19th day of March, 2010;

ORDERED that Defendants Jeffrey Bell, Jon Corzine, Thomas Farrell, George Hayman, Vaughn Hinman, Robert Paterson, Michelle Ricci, Peter Ronoghan, Lydell Sherrer, Dr. Ralph Woodward and the UMDNJ's Motion to Dismiss or for Summary Judgment [docket # 70] is GRANTED IN PART and DENIED IN PART, in accord with this opinion; and it is

ORDERED that Defendants Jeffrey Bell, Jon Corzine, Vaughn Hinman, Michelle Ricci, Peter Ronoghan, and the University of Medicine and Dentistry of New Jersey are TERMINATED as parties in this action.

*/s/ Anne E. Thompson*
———————————————
ANNE E. THOMPSON, U.S.D.J.

---

[8]Ramos's claim for compensatory and punitive damages against Hinman, Ronoghan, Bell and Ricci in their individual capacities for failure to provide adequate medical care is not barred by the Eleventh Amendment.  However, this claim fails because, as discussed above, the Court found that these defendants as non-medical prison officials were not deliberately indifferent as a matter of law.