NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Jose RAMOS, | : |
| Plaintiff, | : Civil No. 08-2585 (AET) |
| v. | : **Opinion & Order** |
| Jon CORZINE, et al., | : |
| Defendants. | : |

THOMPSON, U.S.D.J.

This matter has come before the Court upon Defendants Correctional Medical Services, Inc. ("CMS"), Lionel Anicette, M.D. ("Dr. Anicette"), Abu Ahsan, M.D. ("Dr. Ahsan"), Ihuoma Nwachukwu, M.D. ("Dr. Nwachukwu"), David Meeker, M.D. ("Dr. Meeker"), Allan Martin, M.D. ("Dr. Martin"), Donique Ivery ("Ivery") and Jason Pugh's ("Pugh") (collectively, "CMS Defendants") Motion to Dismiss and, alternatively, for Summary Judgment [docket # 83] on the outstanding state law claims against them. The Court has decided this motion after taking into consideration the submissions of the CMS Defendants, without oral argument, pursuant to Fed. R. Civ. P. 78(b).[1] For the reasons set forth below, Defendants' Motion is granted.

**I.    Background**

The Court assumes that all parties are familiar the facts of this matter and therefore will not discuss them in detail at this time. To quickly summarize, Plaintiff Jose Ramos ("Ramos") is incarcerated at the New Jersey State Prison ("NJSP"). Ramos, proceeding *pro se*, filed suit

---

[1] The CMS Defendants' Motion has not been opposed by Ramos.

against the CMS Defendants, among others, seeking injunctive and declaratory relief as well as compensatory and punitive damages for deliberate indifference to his medical needs in violation of the Eighth Amendment (Counts II and V), medical malpractice (Count XI), negligence (Count XII, and negligent infliction of emotional distress (Count XIII). The Court recently dismissed Ramos's Eighth Amendment claims against the CMS Defendants (June 7, 2010 Opinion & Order [82]), leaving only the state law claims outstanding.[2]  The CMS Defendants have now moved for summary judgment on Ramos's state law claims of medical malpractice, negligence, and negligent infliction of emotional distress.

Ramos alleges that he has a condition called "drop foot," which requires specialized orthopedic footwear as well as rehabilitation through a regimen of exercises and physical therapy. (Compl. 27-28 [2].) Because there is a two-year statute of limitations that is applicable to all asserted claims, Ramos's claims are limited to those arising out of three events: (1) the New Jersey Department of Corrections's ("DOC") alleged denial of orthopedic sneakers on June 5, 2006, in response to Ramos's March 13, 2006 request; (2) the submission of another request for orthopedic sneakers on August 1, 2006, and (3) the alleged lack of medical treatment for Ramos's severe back pain on September 1, 2006 and thereafter. (Mem. Order 15.)

Defendant CMS provided healthcare services to prisoners in the custody of the DOC during the time that Ramos's rights were allegedly violated. Dr. Meeker was CMS's Vice President of Operations and was allegedly "responsible for the effective and efficient delivery of healthcare services and related clinical programs to all prison facilities." (Compl. 9.) Dr.

---

[2]Ramos's state law claims were not addressed at the same time as his Eighth Amendment claim because the CMS Defendants did not move for summary judgment on the state law claims in their prior motion.

Anicette was CMS's New Jersey Regional Medical Director and was responsible for clinical operations. (*Id.*) Defendant Pugh was an employee of CMS and was the on-site Health Services Administrator at the NJSP. (*Id.* at 10.) Dr. Martin was an employee of CMS and was the Medical Director at NJSP until April 1, 2008. (*Id.*) Dr. Ahsan is an employee of CMS and was the Medical Director at NJSP as of the filing of this Complaint. (*Id.*) Dr. Nwachukwu was a physician employed by CMS at NJSP. (*Id.* at 11.) Defendant Ivery was a nurse employed by CMS at NJSP. (*Id.* at 12.)

## II.     Legal Standard

### A.     *Rule 12(b)(6) Motion to Dismiss Standard*

Under Fed. R. Civ. P. 12(b)(6), a defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court must accept as true all of a plaintiff's well-pleaded factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). However, a court need not accept conclusory statements or a statements that amount to legal conclusions. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009).

Once the well-pled facts have been identified, a court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S.Ct. at 1949)). A claim is only plausible if a plaintiff has alleged specific facts which "show" an entitlement to relief, as opposed to allegations that allow a mere inference as to the possibility of misconduct. *Id.* In making this determination, a district court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196

(3d Cir. 1993).

### B. Rule 56(b) Summary Judgment Standard

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

To survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. This requires more than the "mere existence of a scintilla of evidence" supporting the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Analysis

To succeed on his negligence claim, Ramos must prove that the CMS Defendants were negligent and that the negligence caused his injury. *Vitrano by Vitrano v. Schiffman*, 305 N.J. Super. 572, 580 (App. Div. 1997). In addition, in order to establish a prima facie case of negligence in a medical malpractice action, Ramos must show: (1) the applicable standard of care, (2) a deviation from that standard of care, and (3) that the deviation proximately caused the

injury.  *Gardner v. Pawliw*, 150 N.J. 359, 375 (1997).  In New Jersey, this requires a plaintiff to submit an affidavit of merit from an appropriate expert, unless the claims of negligence are those that a jury could evaluate using common knowledge or the doctrine of res ispa loquitor.  *Id.*  Finally, a claim of negligent infliction of emotional distress requires proof that a defendant's negligence conduct caused a plaintiff severe emotional distress.  *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989).  For the reasons discussed below, Ramos has failed to establish that a material question of fact exists on which a reasonable jury could find for him on any of these three claims against the CMS Defendants.

The Court, after a full consideration of the parties' submissions and Ramos's medical records, has already concluded that Dr. Anicette, Dr. Meeker, Pugh and Ivery did not participate in or have knowledge of any actions which may have violated Ramos's rights within the applicable statute of limitations.  (June 7, 2010 Opinion 8.)  Thus, Ramos has failed to state a viable claim for negligence, negligent medical malpractice, or negligent infliction of emotional distress against Dr. Anicette, Dr. Meeker, Pugh and Ivery.  The state claims against those four defendants will therefore be dismissed.

As the Court has previously noted, Ramos's claims against CMS are based solely on the fact that CMS "is alleged to have instructed specialty and subspecialty care providers . . . as to what treatments they could or could not provide."  (*Id.* at 7.)  The Court also noted that, according to Ramos's Complaint, the practices and policies which he objects to were all established by the DOC, not CMS.  (*Id.*)  CMS did, in fact, authorize the purchase of orthopedic boots, orthotics, and a heel lift for Ramos, which were then provided by co-defendant Cocco

Enterprises.[3] Dr. Martin, Dr. Nwachukwu, and Dr. Ahsan all personally treated Ramos within the applicable statute of limitations. Their interactions with and treatment of Ramos are spelled out in some detail in the Court's earlier Opinion. (June 7, 2010 Opinion 8-10.) In that Opinion, upon consideration of Ramos's medical records, the Court found that all three were "responsive to Ramos's complaints, order[ed] the necessary examinations, referrals to specialists and treatments to address his needs." (*Id.* at 10.)

Upon consideration of all the evidence submitted, the Court finds that there is no material question of fact as to whether CMS, Dr. Martin, Dr. Nwachukwu, or Dr. Ahsan deviated from the expected standard of care or breached a duty owed to Ramos.[4] Because negligence is a requisite element for all three of Ramos's state law claims, and the Court will grant summary judgment in favor of CMS, Dr. Martin, Dr. Nwachukwu, and Dr. Ahsan on Ramos's state law claims at this time.[5]

**IV.     Conclusion**

For the foregoing reasons, and for good cause shown,

IT IS on this 16th day of August, 2010;

ORDERED that Defendants Correctional Medical Services, Inc., Lionel Anicette, M.D. , Abu Ahsan, M.D., Ihuoma Nwachukwu, M.D., David Meeker, M.D., Allan Martin, M.D.,

---

[3] All claims against Cocco Enterprises have already been dismissed.

[4] Rather, any harm that Ramos suffered appears to have been the result of the policies established by the DOC. Ramos continues to have outstanding claims against a number of DOC employees and administrators.

[5] In addition, Ramos has failed to submit the necessary affidavit of merit on his state law claim for negligent medical malpractice. This alone is reason for the Court to grant summary judgment in favor of the CMS Defendants on the medical malpractice claim.

Donique Ivery and Jason Pugh's Motion to Dismiss and, alternatively, for Summary Judgment [docket # 83] is GRANTED; and it is

ORDERED that Defendants Correctional Medical Services, Inc., Lionel Anicette, M.D. , Abu Ahsan, M.D., Ihuoma Nwachukwu, M.D., David Meeker, M.D., Allan Martin, M.D., Donique Ivery and Jason Pugh are TERMINATED as parties in this action.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.