NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
JOSE RAMOS,                         :
                                    :        Civil Action No.
              Plaintiff,            :        08-2585 (AET)
                                    :
         v.                         :        **O P I N I O N**
                                    :
JON CORZINE et al.,                 :
                                    :
              Defendants.           :
_____:


THOMPSON, U.S.D.J.

     This matter has come before the Court upon Defendants Thomas

Farrell, George Hayman, Robert Paterson, Lydell Sherrer and Ralph

Woodward's motion to Dismiss or for Summary Judgment.  See docket

entry no. 105.   The Court has decided this motion after taking

into consideration the submissions of both parties, without oral

argument, pursuant to Fed. R. Civ. P. 78(b).  For the reasons set

forth below, the motion will be granted.

     **I.   Background**

     On May 27, 2008, Plaintiff Jose Ramos ("Ramos"), proceeding

pro se along with three other inmates, submitted a Section 1983

putative class action Complaint [docket entry no. 1] on behalf of

state prisoners "with serious, debilitating orthopedic and

prosthetic conditions"; the Complaint alleged that these

prisoners had been deprived of their right to adequate medical

care in violation of the Eighth Amendment and the New Jersey Constitution, that Defendants' actions violated state law of medical malpractice, negligence, and that they negligently inflicted emotional distress of the putative class.[1]  The Court denied class certification because Plaintiffs failed to meet the typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.  See docket entry no. 2.  However, Ramos's application to prosecute this matter in forma pauperis was granted, and his claims were proceeded on an individual basis. See id.

    With regard to Ramos, the Complaint alleged that he had pre-incarceration injuries to his feet and legs which resulted in a condition that required rehabilitation through a regimen of exercises and physical therapy.  See docket entry no. 1, at 27-28.  The Complaint also asserted that, during Ramos' incarceration, he was denied a certain type of footwear, namely, "orthopedic sneakers"; in addition, the Complaint asserted that a certain Defendants' policy was at the heart of that denial, since Ramos hypothesized that Defendants' must have adopted the policy of fiscal austerity which caused, inter alia, denial of

_____

    [1] Ramos and the other inmates also alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 794(a), and breach of contract.  The ADA and RHA claims were dismissed without prejudice, and the breach of contract claims was dismissed with prejudice upon the Court's initial screening of the Complaint.  See docket entry no. 2.

"orthopedic sneakers" to Ramos.[2]

A year and a half into this litigation, and after Defendants' answers was filed, Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, Sherrer, Woodward and the University of Medicine and Dentistry of New Jersey ("UMDNJ") moved for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  In their motion ("UMDNJ Motion"), these Defendants asserted, inter alia, that they were not deliberately indifferent to Ramos' medical needs and, in any event, Ramos' claims against them were improperly based on the theory of respondeat superior.

On March 22, 2010, the Court granted the UMDNJ Motion in part and denied in part.  See docket entry no. 80.  First, the Court explained that, pursuant to the holdings of Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), and Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), Defendants Bell, Corzine, Farrell, Hayman, Hinman, Paterson, Ricci, Ronoghan, and Sherrer, not being physicians or medical personnel, could not be

_____

[2] The Complaint detailed events beginning in 1999, however, the Court focused only on Ramos' claims related to three events: (1) the New Jersey Department of Correction's ("DOC") alleged denial of orthopedic sneakers on June 5, 2006; (2) Ramos' submission of another request for orthopedic sneakers on August 1, 2006, and (3) alleged lack of medical treatment for Ramos' back pain on September 1, 2006, since all other challenges raised by Ramos were time-barred.  See docket entry no. 2, at 15.

considered deliberately indifferent to Ramos' medical needs
unless Ramos was entirely denied medical care, and these
Defendants failed to place him in medical care upon becoming
personally aware of his need for such care.  Since it was
undisputed that, at all points relevant to this litigation, Ramos
was under the care of medical personnel, and there was no
evidence or allegations that Bell, Corzine, Farrell, Hayman,
Hinman, Paterson, Ricci, Ronoghan, or Sherrer knew or had any
reason to believe that prison medical staff was not treating
Ramos, the Court concluded that these Defendants were entitled to
summary judgment as to Ramos' Eighth Amendment allegations that
he was denied medical care.[3]

Then, turning to Ramos' assertions that Defendants must have
implemented a certain policy of fiscal austerity, which prevented
Ramos from obtaining "orthopedic sneakers," the Court stated:

> Ramos also contends that Defendants Hayman, Sherrer,
> Paterson, Farrell, and Woodward implemented a fiscal
> austerity plan wherein speciality referrals made by CMS
> doctors are screened and disapproved for non-medical
> reasons related to cost.  In addition, Ramos alleges
> that these Defendants negotiated a contract with CMS
> which improperly extended the delivery date for
> specialty care referrals and required a minimum number
> of prisoners to accumulate on the roster for a
> specialty care clinic before a clinic or consultation
> would be scheduled.

---

[3] In addition, the Court explained that Ramos' claims
against Dr. Woodward and the UMDNJ were subject to dismissal
since the Complaint contained no specific allegations of
deliberate indifference by these Defendants.

Although a prosthetics consult was ordered for Ramos on
May 1, 2006, one had not yet been conducted by August
1, 2006, at which time Ramos renewed his request for
orthopedic sneakers.  Ramos was seen on September 5,
2006 for a prosthetics consult and received orthopedic
boots on November 14, 2006 . . . .

Defendants' brief does not discuss the existence or
absence of a fiscal austerity plan, the terms of the
contract with CMS, Defendants' role in the creation or
administration of such policies, or the implications of
such policies for Ramos's medical care.  Thus, at this
point, taking all inferences in favor of the non-moving
party, the Court finds that there is a material
question of fact as to the existence of a screening
policy or contract which defers or disapproves
speciality referrals, these defendants' awareness of
potential medical risks when they decided to implement
the alleged policies, and the effect of these alleged
policies in delaying Ramos's medical treatment for
non-medical reasons.  Deliberate indifference can be
found where "necessary medical treatment [i]s . . .
delayed for non-medical reasons." Durmer, 991 F.2d at
69 (quoting Monmouth County Correctional Institutional
Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)).

Although Plaintiff has provided no specific evidence
indicating that Defendants Hayman, Sherrer, Paterson,
Farrell, and Woodward were directly involved in the
creation of a fiscal austerity plan or formation of the
contract with CMS, given the roles these defendants
held at the DOC the Court cannot, as a matter of law,
determine that these individuals played no part in the
creation or administration of a policy under which
unconstitutional practices may have occurred.  See
Houston v. Trella, 2006 U.S. Dist. LEXIS 68484, at *10
(D.N.J. Sept. 22, 2006).
. . .

Ramos's Complaint and Opposition [to the motion]
suggest that these orthopedic boots [received in
response for his request for orthopedic footwear] were
inadequate because inmates were not allowed to wear
boots in the gym facilities and he needed to exercise
his leg and ankle in order to avoid "atrophy and loss
of function."  However, the need for orthopedic
sneakers versus orthopedic boots and/or an ankle brace
appears to be a "mere disagreement over acceptable

treatment" – which does not amount to a constitutional violation. [See] <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).

<u>Ramos v. Corzine</u>, 2010 U.S. Dist. LEXIS 26480, at *15-18 (D.N.J. Mar. 22, 2010) (footnotes and citations to docket omitted).

Therefore, the Court: (1) directed the Clerk to terminate those Defendants who were not DOC officials as defendants in this matter; and (2) dismissed all charges against the DOC Defendants except for those Eighth Amendment claims that were based on the alleged fiscal austerity policy and those state law claims that asserted negligent infliction of emotional distress (allegedly suffered by Ramos as a result of his inability to obtain "orthopedic sneakers").

Shortly after the Court granted in part and denied in part the aforesaid UMDNJ Motion, Defendants Correctional Medical Services, Inc. ("CMS"), Dr. Anicette, Dr. Ahsan, Dr. Nwachukwu, Dr. Meeker, Dr. Martin, Donique Ivery and Jason Pugh (collectively, "CMS Defendants") analogously moved for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in alternative, for summary judgment pursuant to Fed. R. Civ. P. 56, challenging Ramos' outstanding state law claims against them. <u>See</u> docket entry no. 83.  The Court issued an opinion and order granting that motion [docket entry no. 85], explaining as follows:

> To succeed on his negligence claim, Ramos must prove that the CMS Defendants were negligent and that the

negligence caused his injury.  [See] Vitrano by Vitrano
v. Schiffman, 305 N.J. Super. 572, 580, 702 A.2d 1347
([N.J. Super. Ct.] App. Div. 1997).  In addition, in
order to establish a prima facie case of negligence in
a medical malpractice action, Ramos must show: (1) the
applicable standard of care, (2) a deviation from that
standard of care, and (3) that the deviation
proximately caused the injury.  [See] Gardner v.
Pawliw, 150 N.J. 359, 375, 696 A.2d 599 (1997).  In New
Jersey, this requires a plaintiff to submit an
affidavit of merit from an appropriate expert, unless
the claims of negligence are those that a jury could
evaluate using common knowledge or the doctrine of res
ispa loquitor. [See id.]  Finally, a claim of negligent
infliction of emotional distress requires proof that a
defendant's negligence conduct caused a plaintiff
severe emotional distress.  [See] Decker v. Princeton
Packet, Inc., 116 N.J. 418, 429 (1989).  [Here], Ramos
has failed to establish that a material question of
fact exists on which a reasonable jury could find for
him on any of these three claims against the CMS
Defendants.

. . . Ramos's medical records [indicates that] Dr.
Anicette, Dr. Meeker, Pugh and Ivery did not
participate in or have knowledge of any actions which
may have violated Ramos's rights . . . .  Thus, Ramos
has failed to state a viable claim for negligence,
negligent medical malpractice, or negligent infliction
of emotional distress against [these Defendants].

[Moreover], Ramos's claims against CMS are based solely
on the fact that CMS "is alleged to have instructed
specialty and subspecialty care providers . . . as to
what treatments they could or could not provide."  . .
. [A]ccording to Ramos's Complaint, the practices and
policies which he objects to were all established by
the DOC, not CMS.  CMS did, in fact, authorize the
purchase of orthopedic boots, orthotics, and a heel
lift for Ramos, which were then provided by
co-defendant Cocco Enterprises.  Dr. Martin, Dr.
Nwachukwu, and Dr. Ahsan all personally treated Ramos .
. . .  Their interactions with and treatment of Ramos
are spelled out in some detail in the Court's earlier
Opinion.  In that Opinion, upon consideration of
Ramos's medical records, the Court found that all three
were "responsive to Ramos's complaints, order[ed] the
necessary examinations, referrals to specialists and

treatments to address his needs."

> Upon consideration of all the evidence submitted, the
> Court finds that there is no material question of fact
> as to whether CMS, Dr. Martin, Dr. Nwachukwu, or Dr.
> Ahsan deviated from the expected standard of care or
> breached a duty owed to Ramos.  Because negligence is a
> requisite element for all three of Ramos's state law
> claims, and the Court will grant summary judgment in
> favor of CMS, Dr. Martin, Dr. Nwachukwu, and Dr. Ahsan
> on Ramos's state law claims at this time.  In addition,
> Ramos has failed to submit the necessary affidavit of
> merit on his state law claim for negligent medical
> malpractice.  This alone is reason for the Court to
> grant summary judgment in favor of the CMS Defendants
> on the medical malpractice claim.

Ramos v. Corzine, 2010 U.S. Dist. LEXIS 86572, at *8-11 (D.N.J.

Aug. 16, 2010) (citations to docket and footnotes omitted, except

footnote 5 is incorporated in the main text).

Consequently, the Court directed termination of the CMS

Defendants as defendants in this matter.  See id.  Therefore, the

only claims left outstanding were Ramos' claims against the DOC

officials alleging that thet violated Ramos' rights by: (1)

implementing the policy of fiscal austerity, pursuant to which

Ramos was provided with orthopedic boots but not "orthopedic

sneakers"; and (2) suffered infliction of negligent emotional

distress as a result of his inability to obtain such "orthopedic

sneakers."

During the following eight months, discovery proceedings as

to these Ramos' claims were completed and closed.  On April 21,

2011, Defendants Thomas Farrell, George Hayman, Robert Paterson,

Lydell Sherrer and Ralph Woodward ("Remaining Defendants") filed

the motion at bar ("Motion"), seeking dismissal of these claims pursuant to Fed. R. Civ. P. 12(b)(6) or, in alternative, seeking summary judgment, pursuant to Fed. R. Civ. P. 56.  See docket entry no. 105.  The Motion has been fully briefed by the parties. See docket entries nos. 106, 109 and 110.

In their Motion, the Remaining Defendants raise a panoply of procedural and substantive challenges.  See docket entry no. 105-2, at 2-3.  Specifically, with regard to Ramos' Eighth Amendment claims, the Remaining Defendants maintain that: (1) Ramos' claims were insufficiently exhausted administratively, since Ramos grieved about his inability to obtain "orthopedic sneakers" but did not expressly tie the denial of such sneakers to the alleged fiscal austerity policy; (2) Ramos' claims are subject to dismissal as based solely on the theory of respondeat superior; (3) the Remaining Defendants did not and could not violate Ramos' rights simply because no policy of fiscal austerity was in existence at all pertinent times; (4) the Remaining Defendants are entitled to qualified immunity; and (5) imposition of punitive damages would be unwarranted.  In addition, with regard to Ramos' state law claim asserting that Ramos suffered negligent infliction of emotional distress as a result of his inability to have "orthopedic sneakers," the Remaining Defendants maintain that this line of challenges should be dismissed for failure to meet the requirements of applicable state provision.

## II.  Legal Standard

### 1.   Rule 12(b)(6) Standard

Under Fed. R. Civ. P. 12(b)(6), the defendant bears the
burden of showing that no viable claim has been presented.  See
Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  A
district court must accept as true all plaintiff's factual
allegations, construe the complaint in the light most favorable
to the plaintiff, and determine whether, under any reasonable
reading of the complaint, the plaintiff may be entitled to
relief.  See Phillips v. County of Allegheny, 515 F.3d 224, 233
(3d Cir. 2008).  However, a complaint must contain sufficient
factual matter showing that a claim is facially plausible.  See
Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d
Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949
(2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556
(2007)).

### 2.   Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c)
if, on the record, "there is no genuine issue as to any material
fact and . . . the moving party is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986); Carrasca v. Pomeroy, 313 F.3d 828,
832-33 (3d Cir. 2002).  A factual dispute is genuine if a
reasonable jury could return a verdict for the non-movant, and it

is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion."  Fed. R. Civ. P. 56(c); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted); see also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

However, summary judgment will not be denied based on mere allegations or denials in the pleadings or bold assertions fostered in the non-moving party's motion paperwork; instead, some evidence must be produced to support a material fact, and this requires more than the "mere existence of a scintilla of evidence" supporting the position fostered by the non-moving party.[4]  Anderson, 477 U.S. at 252; see also Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward

_____

[4] Simply put, self-serving "unsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Anderson, 477 U.S. at 248 (the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial); Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  Thus, to survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249, since the party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex, 477 U.S. at 322.[5]

**III. Analysis**

    1.   Ramos' Eighth Amendment Challenges

        a.   Claims Based on the Fiscal Austerity Policy

In order to succeed in a Section 1983 action claiming inadequate medical treatment, a prisoner must show that a defendant exhibited "deliberate indifference" to a serious medical need.  See Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Durmer, 991 F.2d at 68.  "Deliberate indifference," is a

---

[5] Conversely, when the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (emphasis removed, internal citations omitted).  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

subjective standard of liability consistent with recklessness as that term is defined in criminal law.  See Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

At this juncture, Ramos' Eighth Amendment challenges ensue from: (1) the fact that Ramos was not provided with "orthopedic sneakers" he requested; and (2) Ramos' speculation that such "orthopedic sneakers" were not provided to him because the DOC must had adopted a certain fiscal austerity policy, pursuant to which the sneakers had probably been deemed too expensive, and that consideration had probably been the reason for denial of Ramos' request.

With regard to this challenge, the gist of the position articulated by the Remaining Defendants in their Motion and reply papers can be summarized in a statement that no fiscal austerity policy was ever put in place and, hence, Ramos' request for "orthopedic sneakers" could not have been assessed under such policy or denied on the basis of such policy.  To the degree the Remaining Defendants could attempt to prove this negative (i.e., that no fiscal austerity policy was put in place during the relevant times and, hence, could not have been applied to Ramos), the Remaining Defendants filled the record with abundance of declarations verifying the same.

However, and paramountly here, the Remaining Defendants do not have the burden of proving this negative.  See Celotex, 477

U.S. at 322.  Rather, the burden lies with Ramos to produce more than his bold assertions or a scintilla of evidence supporting his hypothesis about the existence of a fiscal austerity policy and its application to his request for orthopedic sneakers.  See Anderson, 477 U.S. at 252; Siegel Transfer, 54 F.3d at 1130-31; Woodward Street, 2 F.3d at 533; Schoch, 912 F.2d at 657.

Here, Ramos opposes the Motion by relying solely on his bare speculations and self-serving deducements, which he infers from a letter dated June 5, 2006.  In that letter, Christine Bartolomei, a DOC official writing in response to Ramos' administrative grievance, noted that there were no "orthopedic sneakers."  See docket entry no. 1, ¶¶ 84 and 88.  Capitalizing on this sole "no orthopedic sneakers" statement, Ramos: (1) first self-servingly deduces that his request must had been denied on the basis of such hypothetical policy; and then, in a circular fashion (2) self-servingly deduces, from the fact that he was not provided "orthopedic sneakers," that there must had been some fiscal austerity policy in existence at the relevant time.  See docket entry no. 106, at 11 (maintaining that "the[] no-orthopedic sneakers policy . . . could only have been implemented or executed for one reason, namely, to conserve fiscal resources").

However, this circular chain of self-serving deducements presents nothing but Ramos' bold assertions laced with, at most, a scintilla of evidence insufficient to repel summary judgment.

Indeed, if this Court were to slice the language of Christine Bartolomei's letter with Occam's Razor, that language would indicate that she means to state nothing more and nothing less than what she wrote, _i.e._, that – while there were other forms of orthopedic footwear available and in existence (e.g., orthopedic boots that were provided to Ramos), there was no such thing as "orthopedic sneakers."[6]

Since Ramos offered this Court no evidence indicating that there is a genuine dispute as to the fact of non-existence of any fiscal austerity policy (and, as the Remaining Defendants

_____

[6] This aspect was extensively addressed by the United States District Court for the Southern District of New York.  See Alston v. Howard, 925 F. Supp. 1034, 1036, 1037 (S.D.N.Y. 1996) ("At [a] Correctional Facility in New York . . . , each inmate is issued one pair of ankle-high sneakers and six inch leather boots.  The New York State Department of Correctional Services . . . directives . . . govern all requests for state shop boots and sneakers and provide that inmates are entitled to a new pair of sneakers every nine months and a new pair of boots every year.  The inmate is responsible for pursuing any issues regarding state-issued footwear.  An inmate who needs or desires special footwear accommodations or new footwear must make a request to the state shop, which determines whether to issue new footwear to the inmate.  In some instances, inmates are recommended for special boots and sneakers, which are generally referred to as 'high performance' boots and sneakers and are highly prized by inmates.  High performance footwear, also known as "high top" footwear, fit above the ankle.  High performance footwear are of higher quality construction than standard issue footwear but are not specially made or designed and have little therapeutic value.  In contrast, orthopedic footwear is made from a cast of the patient's foot and is constructed at special laboratories.  In addition, orthopedic footwear is specially made for a patient whose foot problem generally cannot be treated by medical or surgical means") (citations to affidavits omitted).  Analogously, this Court's own extensive research located numerous forms of orthopedic footwear but no "orthopedic sneakers."

correctly point out, Ramos had full opportunity to perform

discovery as to this issue, and the discovery has been closed), a

reasonable jury could not return a verdict for Ramos with regard

to his claims based on his hypothesis that the DOC officials

implemented a certain fiscal austerity policy during the relevant

period of time.[7]   See Anderson, 477 U.S. at 248. Consequently,

with regard to Ramos' claims based on this hypothesis, the

Remaining Defendants are entitled to summary judgment.

> b.    Claims Not Based on Fiscal Austerity Policy

In alternative, Ramos' opposition to the Motion asserts that

"lack of any [f]iscal [a]usterity [p]lan is besides the point.

The bottom line is that [the Remaining D]efendants knowingly,

deliberately and intentionally refused to provide [Ramos] with

orthopedic sneakers."   Docket entry no. 106, at 10.

To the degree Ramos is striving to build his claims against

the Remaining Defendants on anything except their alleged

enactment and implementation of a certain fiscal austerity

policy, Ramos' claims have been already dismissed by this Court

when the Court granted, in part, the UMDNJ Motion.  As the Court

explained, the Remaining Defendants – holding supervisory

---

[7] Evidence relied upon by the Remaining Defendants refer to
lack of a fiscal austerity policy in June and August of 2006, or
shortly prior/thereafter. Therefore, this Court cannot rule out
that a certain fiscal austerity measures might have been
implemented during the following years and/or are in place at the
instant juncture; however, such hypothetical later-implemented
measures have no relevance to Ramos' claims at bar.

positions within the DOC – had no personal involvement in the
decision to deny Ramos "orthopedic sneakers."  Since any Ramos'
Eighth Amendment claim unrelated to fiscal austerity policy would
implicate the Remaining Defendants solely on the basis of their
supervisory positions, such pure respondeat superior claims are
facially insufficient: that is why the Remaining Defendants were
already granted summary judgment with regard to these claims when
the Court ruled on the UMDNJ Motion.

> c.   Defendants' Other Positions

As noted supra, the Residual Defendants also asserted that
Ramos' claims should be dismissed on the ground of Defendants'
qualified immunity and/or as unexhausted.  However, in light of
this Court's grant of summary judgment to the Residual Defendants
on the basis of Ramos' failure to produce evidence indicative of
a genuine dispute as to a material facts underlying his
outstanding Eighth Amendment challenges, the Court need not reach
the issues of exhaustion and qualified immunity.

> 2.   Negligent Infliction of Emotional Distress Claims

"Recovery for negligent infliction of emotional harm
requires that it must be reasonably foreseeable that the tortious
conduct will cause genuine and substantial emotional distress or
mental harm to average persons." Decker v. Princeton Packet,
Inc., 116 N.J. 418, 430 (1989).  However, unlike with claims for
intentional infliction of emotional distress, to succeed on a

negligent infliction of emotional distress claim, the plaintiff must establish that the negligent conduct proximately caused the harm, and that the defendant owed the plaintiff "a legal duty to exercise reasonable care." Id. at 429; see also Russo v. Nagel, 358 N.J. Super. 254, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003).

Here, the Residual Defendants correctly point out that, since no fiscal austerity policy was implemented, they had no personal involvement in the events associated with denial of "orthopedic sneakers" to Ramos and, therefore, they could not have owed Ramos any duty of reasonable care. Since the Residual Defendants did not owe any duty to Ramos, they were not in the position to breach that duty and, for that reason alone, Ramos' state law challenges must be dismissed.

In addition, the Residual Defendants maintain that Ramos' claims are subject to dismissal in light of the requirements articulated in the New Jersey Tort Claim Act ("NJTCA").

The NJTCA provides that, "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J. Stat. Ann. § 59:2-1. An exception to this umbrella rule is created for certain claims against public entities for pain and suffering resulting from an injury:

> No damages shall be awarded against a public entity or
> public employee for pain and suffering resulting from
> any injury; provided, however, that this limitation on
> the recovery of damages for pain and suffering shall
> not apply in cases of permanent loss of a bodily
> function, permanent disfigurement or dismemberment
> where the medical treatment expenses are in excess of $
> 3,600.00. For purposes of this section medical
> treatment expenses are defined as the reasonable value
> of services rendered for necessary surgical, medical
> and dental treatment of the claimant for such injury,
> sickness or disease, including prosthetic devices and
> ambulance, hospital or professional nursing service.

NJTCA, § 59:9-2(d).

"Thus, [Sectin] 59:9-2(d) contains a threshold expense [and permanent disfigurement] qualification for the recovery of damages for pain and suffering against a public entity.  In order to recover damages for pain and suffering, plaintiff must suffer a permanent [disfigurement] and his medical expenses must exceed the monetary threshold of $ 3600." J.H. v. Mercer Cty. Youth Det. Ctr., 930 A.2d 1223, 1235 (N.J. Super. Ct. App. Div. 2007) (emphasis removed).

The New Jersey Supreme Court has described the legislative purpose of this subsection of the NJTCA as "an intent that N.J. Stat. Ann. § 59:9-2(d) should preclude recovery for pain and suffering based on subjective evidence or minor incidents." Collins, 696 A.2d at 628. Here, Ramos, in filings made in conjunction with his opposition to the Motion, produced evidence that the discs of his spinal cord showed some narrowing and, in addition, asserted that the DOC must have expended certain monies

treating this ailment, and hypothesizes that such amount could have exceeded $3,600.  See docket entry no. 106, at 17.  However, as the Residual Defendants correctly point out, Ramos offered this Court not a scintilla of evidence, moreover no expert statement and no invoice, indicating that the narrowing of his spinal cord discs resulted from lack of "orthopedic sneakers," or that the DOC expended over $3,600 in treating Ramos' discs: all he offers this Court is an invitation to adopt his self-serving deducements.[8]  Since Ramos' bare deducements cannot amount to a genuine issue of material fact, see  Anderson, 477 U.S. at 252; Siegel Transfer, 54 F.3d at 1130-31; Woodward Street, 2 F.3d at 533; Schoch, 912 F.2d at 657, the Residual Defendants are entitled to summary judgment with regard to Ramos' state law claims.[9]

---

[8] The closing paragraphs of Ramos' opposition to the Motion at bar indicate that Ramos might have developed interest in asserting intentional infliction of emotional distress.  See docket entry no. 106, at 17-18 (attempting to avoid the limitations of Section 59:9-2 by invoking now N.J. Stat. Ann. § 59:3-14 in support of his newly-minted claim that the Residual Defendants "willfully" violated his state law rights).  However, Ramos cannot introduce new claims by means of an opposition to the Motion: a litigant cannot plead claims by any non-pleading document, be it moving papers, an opposition to adversaries' motion, the litigant's traverse, etc.  See, e.g., Bell v. City of Phila., 275 Fed. App'x 157, 160 (3d Cir. 2008); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004); Veqqian v. Camden Bd. of Educ., 600 F. Supp. 2d 615, 628 (D.N.J. 2009).

[9] The Court notes, in passing, that all submissions at bar are silent as to Ramos' due filing of notice of tort claim.  The NJTCA requires a plaintiff to file a notice of claim against a public entity within ninety days after the cause of action

Thus, the Motion by Defendants Thomas Farrell, George Hayman, Robert Paterson, Lydell Sherrer and Ralph Woodward will be granted in its entirety, and this Court will direct termination of the Residual Defendants as defendants in this matter.

**IV. Conclusion**

For the foregoing reasons, Defendants Thomas Farrell, George Hayman, Robert Paterson, Lydell Sherrer and Ralph Woodward's motion to Dismiss or for Summary Judgment [docket entry no. 105] will be granted.  The Clerk will be directed to terminate Thomas Farrell, George Hayman, Robert Paterson, Lydell Sherrer and Ralph Woodward Defendants in this action.  Having dispose of all still-outstanding Ramos' claims raised in this action, this Court will direct the Clerk to close the file on this matter.

An appropriate Order accompanies this Opinion.


      /s/ Anne E. Thompson
**Anne E. Thompson,
United States District Judge**


Dated:  October 28        , 2011

_____

accrues. N.J. Stat. Ann. § 59:8-8; Epstein v. Smith, 709 A.2d 1353, 1355-56 (N.J. Super. Ct. App. Div. 1998).  Here, Ramos did not assert filing of due notice in his Complaint, and the issue was left unaddressed in all subsequent submissions.  In the event Ramos failed to file a timely due notice of claim, his state law challenges are also subject to dismissal on this ground.